

# Office of the Attorney General
## State of Texas

**DAN MORALES**
ATTORNEY GENERAL

July 9, 1993

Honorable Roland Saul
Criminal District Attorney
Deaf Smith County
235 East Third, Room 401
Hereford, Texas 79045

Opinion No. DM-232

Re: Whether the City of Hereford is authorized to convey a city park to the Deaf Smith County Hospital District (RQ-519)

Dear Mr. Saul:

On behalf of the Deaf Smith County Hospital District (the "hospital district"), you ask whether the City of Hereford (the "city") is authorized to convey a parcel of land to the hospital district. By way of background, you explain that the hospital district operates the Deaf Smith General Hospital (the "hospital") and that adjacent to the hospital is a one and a half acre parcel of land owned by the city. The property was deeded to the city to be used for a park for the benefit of the public. There are no improvements on the property. The hospital district "has determined that additional facilities are needed and . . . [t]he tract is the only location upon which the facilities could be constructed in the manner to best suit the [hospital district's] needs." In addition, you state that the hospital district has asked the city to make a gift of the land to the district, and that the district "anticipates that the [c]ity will find the paramount public use of the property to be the expansion of the [h]ospital and will convey the property to the [d]istrict for no cash consideration." In essence, you ask whether the conveyance would be prohibited by section 253.001 of the Local Government Code or article III, section 52 of the Texas Constitution.

Section 253.001 of the Local Government Code provides in pertinent part:

> (a) Except as provided by Subsection (b), the governing body of a municipality may sell and convey land or an interest in land that the municipality owns, holds, or claims as a . . . park . . . .

> (b) Land owned, held, or claimed as a public square or park may not be sold unless the issue of the sale is submitted to the qualified voters of the municipality at an election and is approved by a majority of the votes received at the election[1] . . . .

---

[1]We assume that neither the exception set forth in the remainder of subsection (b) for land sold to a district, county, or corporation acting on behalf of a county or district for drainage purposes, nor the

> (c) To effect the sale, the governing body shall adopt an ordinance directing the municipality's mayor or city manager to execute the conveyance.

> (d) The proceeds of the sale may be used only to acquire and improve property for the purposes for which the sold property was used. Failure to so use the proceeds, however, does not impair the title to the sold property acquired by a purchaser for valuable consideration.

Local Gov't Code § 253.001 (footnote added). Article III, section 52 of the Texas Constitution provides that a city is not authorized "to lend its credit or to grant public money or thing of value in aid of, or to any individual, association or corporation whatsoever."

In Attorney General Opinion H-108 (1973), this office considered whether a city could convey parkland to a state agency under former article 1019, V.T.C.S., a predecessor statute to section 253.001 of the Local Government Code. This office concluded that the restrictions and procedures set forth in article 1019 were inapplicable "when the proposed grantee is another governmental agency having powers of eminent domain over the property involved," relying upon *Kingsville Indep. Sch. Dist. v. Cranshaw*, 164 S.W.2d 49 (Tex. Civ. App.-1942, writ ref'd w.o.m.), and *El Paso County v. City of El Paso*, 357 S.W.2d 783 (Tex. Civ. App.-El Paso 1962 no writ). Attorney General Opinion H-108 (1973) at 2-3. Similarly, in Attorney General Opinion H-1256 (1978), this office considered whether the City of Midland could donate a street right-of-way to Midland County under the same provision. With respect to article 1019, this office stated that

> governing bodies with the power of eminent domain need not secure the consent of an electorate to obtain property they need for public purposes.... If the city and the county agree that the paramount need is a need for courthouse facilities, there is no difficulty. What Midland County might do by resort to condemnation proceedings, it can do by agreement with the City of Midland.

Attorney General Opinion H-1256 (1978) at 2 (citations omitted). The opinion concluded, "If the city and the county reach agreement respecting the paramount public use of the property, and if the exchange is made for an adequate consideration or to

---

(footnote continued)
exception set forth in subsection (e) for park land conveyed pursuant to an ordinance with an effective date prior to November 1, 1989, is applicable here.

accomplish a proper public purpose, we believe a transfer of the property to Midland County without an election would probably be upheld by the courts." *Id.*

The hospital district has the power of eminent domain. *See* Acts 1971, 62d Leg., ch. 59, § 14, at 671 (Deaf Smith County Hospital District enabling act).[2] We also note that the board of directors of the hospital district is authorized to accept donations, gifts, and endowments on behalf of the hospital district for hospital, medical and health care purposes by section 18 of the enabling act. Acts 1989, 71st Leg., ch. 874, § 4, at 3868 (amending Acts 1971, 62d Leg., ch. 59, § 18, at 673). Therefore, the reasoning of the foregoing attorney general opinions applies with equal force here. Accordingly, we conclude that, in order to convey the park to the hospital district, the city need not adhere to the procedures set forth in section 253.001.

Although we conclude that section 253.001 of the Local Government Code is inapplicable, we believe that a provision enacted in 1985, some years after the foregoing attorney general opinions were issued, precludes the city from gratuitously conveying the property. *See* Local Gov't Code § 272.001(b)(6); Acts 1985, 69th Leg., ch. 367, at 1440. Section 272.001, subsection (a) of the Local Government Code generally requires that before land owned by a political subdivision of the state may be sold or exchanged, notice of the land for sale or exchange must be published and bids must be accepted. Local Gov't Code § 272.001(a).   Subsection (b) provides that these notice and bidding requirements do not apply to certain types of land and real property interests, including a "real property interest conveyed to a governmental entity that has the power of eminent domain." *Id.* § 272.001(b)(6). Subsection (b), however, also makes clear that such land and interests "may not be conveyed, sold, or exchanged for less than the fair market value of the land or interest." *Id.* § 272.001(b). It further provides that "[t]he fair market value is determined by an appraisal obtained by the political subdivision that owns the land or interest, and the appraisal is conclusive of the fair market value of the land or interest." *Id.* § 272.001(b). Accordingly, we conclude that the city is prohibited from conveying the property to the hospital district for less than fair market value.[3]

---

[2]Section 14 of the hospital district's enabling act provides in pertinent part:

> The district shall have the right and power of eminent domain for the purpose of acquiring by condemnation any and all property of any kind and character in fee simple, or any lesser interest therein, within the boundaries of the district necessary to the powers, rights, and privileges conferred by this Act, in the manner provided by the general law with respect to condemnation by counties . . . .

[3]Given this conclusion, we do not consider whether article III, section 52 of the Texas Constitution prohibits the conveyance of the property for less than fair market value.

Finally, we note that chapter 26 of the Parks and Wildlife Code may apply to the proposed conveyance. Section 26.001(a) of this chapter states in pertinent part that a municipality

> may not approve any program or project that requires the use or taking of any public land designated and used prior to the arrangement of the program or project as a park ... unless the ... municipality, acting through its duly authorized governing body or officer, determines that:
>
> (1) there is no feasible and prudent alternative to the use or taking of such land; and
>
> (2) the program or project includes all reasonable planning to minimize harm to the land ... resulting from the use or taking.

The foregoing findings may be made only after notice and a hearing. Parks & Wild. Code § 26.001(b).[4] Section 26.004 exempts certain land from these requirements. Although you have not asked about chapter 26 of the Parks and Wildlife Code and have not provided us with sufficient information to determine whether or not it would apply to the park at issue, you should be aware that this office has held that its predecessor statute applied to conveyances similar to the one you describe. *See, e.g.,* Attorney General Opinions MW-471 (1982); H-108 (1973); M-788 (1971).

---

[4]The notice and hearing requirements are set forth in section 26.002. The chapter requires the governing body of a municipality to "consider clearly enunciated local preferences," but states that it does not prohibit a use or taking "if the findings are made that justify the approval of a program or project." *Id.* § 26.001(c). The chapter also provides for judicial review of the decision to approve or disapprove a program or project, provided a petition is filed within 30 days after the decision is announced. *Id.* § 26.003.

## S U M M A R Y

In order to convey a city park to the Deaf Smith County Hospital District, the City of Hereford need not adhere to the procedures set forth in section 253.001 of the Local Government Code. Section 272.001 of the Local Government Code, however, prohibits the conveyance of the land to the hospital district for less than fair market value. In addition, chapter 26 of the Parks and Wildlife Code may apply to the proposed conveyance.

Very truly yours,

DAN  MORALES
Attorney General of Texas

WILL PRYOR
First Assistant Attorney General

MARY KELLER
Deputy Attorney General for Litigation

RENEA HICKS
State Solicitor

MADELEINE B. JOHNSON
Chair, Opinion Committee

Prepared by Mary R. Crouter
Assistant Attorney General